## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICOLE JOLENE KRIEBEL** | ) |
| | ) |
| **Plaintiff,** | )    **Civil Action No. 10-152E** |
| | ) |
| **v.** | ) |
| | ) |
| **MICHAEL J. ASTRUE, COMMISSIONER** | ) |
| **OF SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION

### *I. Introduction*

Pending before this court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Nicole Jolene Kriebel ("Plaintiff" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 et. seq. Plaintiff argues that the decision of the administrative law judge ("ALJ") should be reversed and the Commissioner directed to award Plaintiff benefits because the ALJ's determination is not supported by substantial evidence, and thus, she is entitled to SSI benefits. To the contrary, Defendant argues that the decision of the ALJ is supported by substantial evidence, and therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

For the reasons stated below, the Court will grant Plaintiff's Motion for Summary Judgment to the extent that she seeks a remand for further proceedings and otherwise, deny the Defendant's Motion for Summary Judgment.

## II. Procedural History

On August 3, 2004, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB") and also filed a Title XVI application for SSI, (R. at 341; 356), claiming that she became disabled and unable to work after November 1, 1997. Id. On November 11, 2004, the Disability Examiner, J. Hoppel, determined that Plaintiff was not disabled, even though she was diagnosed with major depressive disorder (MDD) and panic disorder with agoraphobia. (R. at 344). On November 12, 2004, the Social Security Administration issued a Notice of Disapproved Claim to Plaintiff. (R. at 346). The Social Security Administration ("Administration") explained that while Plaintiff alleged that she was unable to work because she suffered from anxiety, depression, panic attacks, and short term memory loss, she was still able to work. Id.

On January 11, 2005, Plaintiff filed a timely written request for a hearing. The hearing was held on August 23, 2006. Present at the hearing were Plaintiff, her attorney, and Sam E. Edelmann, an impartial vocational expert. Based on evidence presented at the hearing, Administrative Law Judge, Lamar W. Davis issued an opinion on November 14, 2006. In his opinion the ALJ found that the Plaintiff had the following severe impairments: depression, panic attacks, alcohol abuse, and loss of concentration. (R. at 358). However, the ALJ determined that Plaintiff was not disabled under the SSA. (R. at 361). The ALJ concluded that Plaintiff's impairments did not meet or medically equal one of the Listed Impairments found in the SSA, 20 C.F.R. Part 404, Subpart P, Appendix I, (R. at 359), and that Plaintiff had the Residual Functioning Capacity ("RFC") to perform light work involving "no exposure to environmental conditions; a sit/stand option; simple, routine, repetitive tasks; only incidental decision-making

2

and changes in work; no piece work production rate pace; no interaction with the general public; and only incidental interaction with co-workers." Id.

Plaintiff again applied for SSI under Title XVI of the SSA on December 18, 2006 alleging disability due to anxiety, panic attacks, depression, short-term memory loss, bipolar disorder, back pain, and agoraphobia. (R. at 383). In this 2006 application, Plaintiff stated that her disability began on January 15, 2000. (R. at 383; 392). Plaintiff, in her December 18, 2006 Disability Report, reported that her protective filing date was December 8, 2006. (R. at 392). Additionally, Plaintiff explained that she had previously been denied both Disability Insurance ("DI") and Disability Insurance Benefits ("DIB") in November 2006. (R. at 393).

On March 28, 2007 the Disability Examiner issued an "Analysis of Vocational Factors." (R. at 367). The Disability Examiner stated that Plaintiff's past relevant work had been assessed and that she had the ability to perform past relevant work as a general laborer. Id. Later, on April 12, 2007, the Administration issued a Notice of Disapproved Claim for Plaintiff's claim of SSI payments. (R. at 368). The Administration concluded that Plaintiff was not disabled, and thus, not entitled to such benefits. Id. On April 24, 2008, the Appeals Council issued its denial of Plaintiff's request for review of the 2006 ALJ decision, and thus, stated that the decision was the final decision of the Commissioner. (R. at 12). Plaintiff filed a May 25, 2007 Request for a Hearing before an ALJ. (R. at 373-74).

On July 14, 2008, a hearing before ALJ, Ronald A. Marks was held where Plaintiff appeared with counsel and testified. (R. at 640). Plaintiff stated she had probably not worked since around 2001 when she held a job for a week. (R. at 643). Plaintiff described that she was not able to work because she had "ongoing severe panic attacks" and that she experienced panic attacks whenever she had an appointment with someone, but that she was not able to quantify

3

how many attacks she got in a month. (R. at 647). In comparison to two or three years ago, Plaintiff explained that she had "fewer good days" with respect to her mental health condition and that she was "[a] lot worse" than she used to be. (R. at 653). She explained that due to her conditions, she went to bed at around 11:00 p.m. and did not wake up until 4 p.m. (R. at 654).

Karen Kroll, a vocational expert ("VE"), testified at the hearing. (R. at 657). The first hypothetical the ALJ posed to the VE read as follows:

> I want you to consider for me an individual like this Claimant, the same age, education, has the residual functioning capacity for light work. This individual is able to lift 20 pounds occasionally, 10 pounds or less frequently, has some additional limitations, should be no ladders, ropes and scaffolds. This individual is limited to simple one and two-step routine, **low-stress** procedures with limited and superficial interaction with supervisors, coworkers and the public and is precluded from tasks that involve arbitration, negotiation, confrontation and supervision. This individual must avoid all workplace hazards. Any jobs in the national or regional economy for such an individual?

(R. at 657) (emphasis added). In response, the VE stated that given Plaintiff's RFC and limitations, the jobs of cleaner and laundry worker at the light level met the hypothetical. (R. at 657-58). The ALJ next posed a second hypothetical to the VE with the additional restrictions of a sit/stand option, along with no interaction with the public or supervisors. (R. at 659). The VE responded that there would be "no jobs" for the Plaintiff to perform. Id.

In his decision of September 23, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the SSA as of December 8, 2006, which was the date Plaintiff's application was filed. (R. at 24). The ALJ concluded that Plaintiff suffered from the following severe impairments: panic attacks, post-traumatic stress disorder, depression, and a history of substance abuse. (R. at 26). However, the ALJ ultimately determined that none of Plaintiff's impairments met or medically equaled one of the Listed Impairments found in the SSA, 20 C.F.R. Part 404, Subpart P, Appendix I. Id. The ALJ further found that Plaintiff,

4

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot use ladders, ropes, or scaffolds. She is limited to simple 1 or 2 step tasks that **do not involve stress** or more than simple interaction with co-workers, the public and supervisors. She must avoid all hazards.

(R. at 27) (emphasis added).

The ALJ also determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform pursuant to 20 C.F.R. 416.960(c) and 416.966. See id. The ALJ pointed out that the VE testified that the jobs of cleaner, dishwasher, and laundry worker all fit the Plaintiff's limitations and RFC. (R. at 30-31).

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot use ladders, ropes, or scaffolds. She is limited to simple 1 or 2 step tasks that do not involve stress or more than simple interaction with co-workers, the public and supervisors. She must avoid all hazards.

(R. at 27).

The ALJ further stated that he had considered all symptoms to the extent they were reasonably consistent with objective medical evidence and opinion evidence. See id. The ALJ finally declared, "In sum, the residual functional capacity assessment is supported by the overall objective medical evidence of record." (R. at 30).

Plaintiff filed a September 25, 2008 Request for Review of Hearing Decision/Order with the Appeals Council. (R. at 381). On April 22, 2010, the Appeals Council denied Plaintiff's request for review. (R. at 9-11). In turn Plaintiff filed a timely civil action on June 28, 2010 requesting this Court review the decision of the Commissioner.

### *III. Medical History*

We note that in her appeal, Plaintiff asserts only that the ALJ erred with respect to his evaluation of the Plaintiff's mental impairment, and therefore, Plaintiff has waived any argument

5

that she was disabled due to any physical impairment. See Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000).

Because Plaintiff states her disability began on or about January 15, 2000, the medical history is restated dating back to a May 11, 2000 "Initial Psychiatric Evaluation" performed by Dr. Ann McDonald of Hamot Behavioral. Dr. McDonald states that Plaintiff suffers from "Major Depression, recurrent, Social Anxiety Disorder, Alcohol Dependence, Borderline Person [sic] Traits, and Moderate, Psychosocial Stressors." (R. at 198). Dr. McDonald assigned Plaintiff a Global Assessment Functioning of GAF=40-45. Id. A GAF score is a clinician's judgment of overall functioning. A GAF score of 50 indicates serious symptoms and a GAF score of 60 indicates moderate symptoms. See Sargent v. Astrue, 2011 WL 3844192, *4 n.15 (W.D.Pa.2011). Dr. McDonald prescribed Wellbutrin and Valium and referred her for group therapy with consideration for Bipolar Disorder group. (R. at 198-99).

On August 29, 2002, Edward Zuckerman, Ph.D. performed a mental Residual Functional Capacity assessment in which he concluded that that was no evidence of limitation in any mental activity in the context of the Plaintiff's capacity to sustain activity over a normal workday and workweek on an ongoing basis. The categories included Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. (R. at 223).

A Turning Point inpatient treatment letter of January 10, 2007 states that Plaintiff was admitted to Turning Point on April 30, 2004 and completed inpatient treatment on June 7, 2004. She showed satisfactory progress and followed procedures. However, she continued to have problems in the areas of "letting go of resentments and continuing to develop self-esteem." Plaintiff was transitioned to a Community Half-Way House on June 7, 2004. (R. at 444).

6

A July 27, 2004 Stairways Behavior Health Outpatient Clinic ("Stairways") "Psychiatric Exam and Evaluation" performed by Sean Su, M.D. states the Plaintiff's mood is "Depressed." Her affect is anxious and sometimes dysphoric. Her long-term and short-term memory appears to be generally intact. Her intelligence appears to be around average. Her insight and judgment currently appear to be fair. Dr. Su makes a diagnosis of Major Depressive Disorder, recurrent, panic disorder with agoraphobia, history of cocaine dependence. Dr. Su also noted that Plaintiff had legal problems and family and social stressors. Dr. Su assigned Plaintiff a GAF = 50. He recommends a treatment of Wellbutrin for Plaintiff's depression and Trazodone for depression and insomnia. Plaintiff was also to continue with outpatient psychiatric treatment with Stairways as well as continued drug and alcohol rehabilitation treatment through the halfway house where she resided. (R. at 275-76; 447).

On October 27, 2004 Plaintiff checked in to Saint Vincent Health Center, Erie, PA complaining of increased depression secondary to back pain, associated with vague suicidal ideations. The examining doctor reported her as without neurovegetative signs of depression. It was also noted that her affect was not restricted, she did not seem depressed, and she had been free of suicidal ideations. (R. at 459). After two days in the hospital Plaintiff was discharged with a prescription for Neurontin and Wellbutrin. Plaintiff was told to follow up at Stairways and with a pain doctor for narcotics, if necessary. See id.

On November 1, 2004 Edward Zuckerman, Ph.D. performed another Functional Capacity Assessment. His summary stated that Plaintiff's medical evidence establishes a medically determinable impairment of "MDD, Currently Moderate Panic Disorder with Agoraphobia, Moderate, and Polysubstance Dependence, In Early Full Remission." (R. at 284). Dr. Zuckerman reported that Plaintiff evidenced no impairment of memory function secondary to her

7

impairment and found that she could make simple decisions as well as be able to carry out very short and simple instructions. See id. Dr. Zuckerman said Plaintiff experiences anxiety and discomfort around strangers and reports panic attacks and her ability to function socially is impaired secondary to some lability. However, she could sustain an ordinary routine without special supervision. See id. Dr. Zuckerman only finds Plaintiff's statements to be partially credible and in his final analysis declared that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. (R. at 284).

On October 27, 2004 Plaintiff voluntarily admitted herself to Saint Vincent Mental Health, self-reporting the following to Drs. Dan Hesch and John W. Bareaux:

> [I]ncreasingly depressed over the past 2 weeks, feeling overwhelmed specifically towards having difficulty managing her current relationship with her boyfriend, Doug . . . She reports that she is having a difficult time in dealing with back pain associated with three bulging discs in the lower back. She said she has noticed a decrease in her overall functioning, not able to care for herself or her apartment that she shares with her boyfriend. . . She has been isolating socially. Feels depressed, confused, reports recent memory loss . . . Reports she has had suicidal ideations with depression over the past week with no plan . . . She reports an increase in crying spells. Sleeping at times up to 14 hours a day over the past 2 weeks . . . Feels hopeless and helpless at times. (R. at 478 - 79).

The October 28, 2004 "Psychosocial Assessment" signed by Dr. Hesch described Plaintiff as appropriate and cooperative, though her affect at times was tearful, mood was admittedly depressed, but "verb" was clear and relevant. Her thought content was clear and rational and there were no delusions or flight of ideations noted. Plaintiff's recent memory seems poor but remote memory intact. (R. at 479).

On October 29, 2004 Plaintiff was discharged from Saint Vincent Mental Health. In the October 29, 2004 discharge summary from written by Dan Hesch, M.S. and John W. Barteauz, M.D. to the service of Dr. Max Gottesman, the doctors describe Plaintiff as

[a]lert and oriented. She is ambivalent about staying the weekend. She does feel better now that she is back on her Wellbutrin. We discussed the fact that she experiences racing thoughts and anxiety on the Wellbutrin and it is my feeling that an anticonvulsant like Neurontin could treat her pain and facilitate sleep when in pain which she is complaining of today as well as serve as a mood stabilizer and antianxiety agent . . . This made her feel more optimistic. Since she has been free of suicidal ideation she is requesting discharge . . . She is without neurovegetative signs of depression here in the hospital. Her affect is not restricted. She does not seem depressed at this point . . . I have no concern about her suicidal risk.

(R. at 460-61).

On April 5, 2005 Plaintiff was admitted to the Esper Treatment Center ("ETC") for dependence on opiates. In an August 21, 2006 letter, ETC reports that Plaintiff participated in its program, including individual sessions, support group meetings, and involvement with Stairways Behavioral Health. ETC reports that Plaintiff had negative drug screens and treatment had a positive effect. It was recommended that Plaintiff continue her treatment and progress. (R. at 335).

Richard Gacka, Ed.D. of Stairways Behavioral Health, Department of Educational and Psychological Services, performed an evaluation of Plaintiff on September 27, 2005 and December 9, 2005. Dr. Gacka in his evaluation describes Plaintiff as appearing to be constantly in a type of reactive mode, showing minimal organization and planning. She appears to be constantly "wired" or having two or three things going on in her mind at the same time, and as a result seems unable to focus or persevere long enough on any single task to generate acceptable performance. She is extremely disorganized, unreliable, and inattentive, "all attributes that do not bode well for sustained employment." (R. at 306). Dr. Gacka gives Plaintiff a prognosis for employability for unskilled work as "average," for low skilled work "average," for technical work "average to poor." (R. at 307).

Byron E. Hillin, Ph.D. (Clinical Psychologist) evaluated Plaintiff after she was referred to him through the Bureau of Disability on March 10, 2007. Dr. Hillin described Plaintiff as

9

disheveled and unkempt. He stated that Plaintiff appeared mildly anxious and fidgety with mood lability but eye contact was appropriate. She was tearful but her speech was relevant, coherent and goal-directed and her speech articulation was appropriate. He further stated that she was receptive and expressive language functions remained intact. However, during the evaluation Plaintiff complained of mood regulation difficulties, oftentimes finding herself anxious, worrying constantly and having flashbacks to sexual abuse by her father. She described her sleep as extremely poor due to having night terrors. She said when she gets up at night she eats and has gained approximately thirty pounds in the last year. Plaintiff described passive suicidal ideation, feeling that she would be better off dead but denies any plans or intent, or any attempt to harm herself. She described panic episodes, feeling faint and having heart palpitations that are exacerbated when she is in public. She described herself as having mild bipolar symptoms including thought racing, inability to sleep for up to two days, having mild periods of energy. Dr. Hillin's diagnostic impression was Bipolar Disorder NOS, moderate; Panic Disorder without Agoraphobia; History of Crack Cocaine Addition in reported remission, two years; History of Alcohol Abuse, in reported remission, two years; Posttraumatic Stress Disorder, mild; Personality Disorder NOS with borderline features; Back pain; and severe legal problems and financial stress. Dr. Hillin assigned Plaintiff a GAF = 55-60. (R. at 531- 36).

Dr. Hillin stated Plaintiff was in need of continued psychiatric treatment but remains competent to manage her own finances. He noted only mild attention and concentration difficulties and said she could retain and follow simple direction and retain simple instruction. She appeared able to do simple repetitive tasks. He said Plaintiff will have moderate difficulties relating to others given her anxiety features and guardedness. He found Plaintiff's statements to be partially credible. (R. at 536 - 37).

Another Residual Functional Capacity Assessment was performed on March 19, 2007. On a scale in which the range included "Not Significantly, Moderately Limited, Markedly Limited, No Evidence of Limitation, and Not Ratable on Available Evidence," Plaintiff was found to be Moderately Limited in her ability to maintain attention and concentration for extended periods and in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She was considered Moderately Limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She was considered Moderately Limited in her ability to accept instructions and respond appropriately to criticism from supervisors. She was considered Moderately Limited in her ability to respond appropriately to changes in the work setting. She was considered Moderately Limited in her ability to set realistic goals or make plans independently of others. All other areas were considered Not Significantly Limited. The Explanation of Findings in summary states the Plaintiff appears able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. The RFC Assessment was signed by Douglas Schiller, PhD. (R. at 547).

In the same report, where the Degrees of Limitation range included, "None, Mild, Moderate, Marked, and Extreme," it is stated that there is a "Mild" degree of limitation of Activities of Daily Living and a "Moderate" degree of limitation in maintaining social functioning and maintaining concentration, persistence or pace. The degrees of mild and moderate do not satisfy the functional criterion. (R. at 560).

On May 31, 2007 Dr. Su, of Stairways, filled out a questionnaire sent by the Social Security Administration that assesses Plaintiff's abilities. Dr. Su's responses were as follows:

Plaintiff shows Moderate impairment with regard to understanding and remembering short, simple instructions. She shows Moderate impairment with regard to carrying out short, simple instructions. She shows Marked impairment in understanding and remembering detailed instructions, she shows Marked impairment in carrying out detailed instructions. She shows Extreme impairment in making judgments on simple work-related decisions. She shows Extreme impairment interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, interacting appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting. Dr. Su did not believe Plaintiff could manage benefits in her own best interest.

(R. at 565- 67).

On August 28, 2007 Plaintiff underwent successful 4-day drug and alcohol detoxification to wean her from Methadone. (R. at 569).

On March 26, 2008, Physician's Assistant (PA-C) Josh Leslie of Stairways completed a form regarding Plaintiff's "Mental Abilities and Aptitudes Needed to Do Unskilled Work." On this form Mr. Leslie circled the following items as those activities that Plaintiff would not be able to perform:

> The ability to maintain attention for extended periods. The ability to maintain regular attendance and be punctual with customary tolerances. (These tolerances are usually strict.) The ability to work in coordination with or proximity to others without being (unduly) distracted by them. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (These requirements are usually strict.) The ability to accept instructions and respond appropriately to criticism from supervisors. The ability to get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes.

(R. at 578)

Mr. Leslie also circled yes to the question, "Are your opinions based upon mental status examinations, observation of patient, clinical history, and/or review of symptoms/signs." Id.

An Esper Treatment Center letter dated July 15, 2008 stated that Plaintiff attends scheduled individual appointments regularly and attends MMT regularly. Further, Plaintiff reported she attends support group meetings but does not return summary meeting reports, she is

involved in Stairways Behavioral Health, she reports she is following physician's recommendations, she participates in random drug screenings and has not tested positive. (R. at 614).

### *IV. Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

### *V. Discussion*

Under SSA, the term "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. §§ 416(i)(l)(A); 423(d)(1)(A); 20 C.F.R. 404.1505. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, he must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent him from performing his past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering his residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

In support of her motion for summary judgment, Plaintiff generally argues that the ALJ "ignored pertinent medical evidence." (Plaintiff's Brief in Support of Motion for Summary Judgment ("MSJ") at 12). Plaintiff then makes five specific arguments supporting his motion.

14

First, Plaintiff argues that the ALJ's decision included an erroneous statement of Plaintiff's RFC because it stated that Plaintiff could perform work involving "no stress" and no such jobs exist. Id. Second, Plaintiff argues that the ALJ failed to properly evaluate the opinions of Plaintiff's treating and examining physician and physician's assistant because there is no mention of such in his decision. Id. at 12-13. Third, Plaintiff argues that the ALJ selectively reviewed the psychological report completed by Bryon Hillin, Ph.D., and did not indicate the weight he gave to the report. Id. at 19-20. Fourth, the Plaintiff argues that the ALJ gave improper deference to the non-examining state agency source, psychologist, Douglas Schiller, Ph.D. Id. at 20. Fifth, Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective complaints as not entirely credible. Id. at 18-19.

In response to Plaintiff's arguments, Defendant generally alleges that the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Defendant further argues that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints are not entirely credible. (Defendant's Brief in Support of MSJ at 10). Defendant next argues that substantial evidence supports the ALJ's determination of Plaintiff's RFC finding that Plaintiff could perform some light work. Id. at 12. Defendant further argues that the Commissioner met his burden at step five to show evidence of other work that Plaintiff could perform, notwithstanding the difference between the ALJ's determination of Plaintiff's limitations in his decision and the limitations presented in the ALJ's hypothetical question to the vocational expert at the hearing. Id. at 17-18.

In response to Defendant's arguments, Plaintiff filed a reply brief. (Plaintiff's Reply Brief in Support of MSJ). There, Plaintiff generally alleged that the Commissioner did not properly address her arguments and that the ALJ failed to properly consider the entire medical

record. (Plaintiff's Reply Brief in Support of MSJ). More specifically, Plaintiff reiterated her arguments from her motion for summary judgment, except she did not restate her argument based on Plaintiff's RFC.

Although Plaintiff did not fully argue her first issue , because of the discrepancy between the ALJ's hypothetical to the VE, where he asks for "low-stress" jobs, and his Residual Function Capacity determination where he says "no stress," it is necessary to determine whether the ALJ's error was a mere typographical or scrivener's error. If it was a typographical or scrivener's error, than we may treat it as such and proceed without analysis of whether the ALJ's residual functional capacity determination is supported by substantial evidence. If it is not apparent/clear that the error was a typographical error, then we must remand the matter back to the Commissioner for further proceedings.

## 1. Whether ALJ's Discrepancy in Reference to Low-Stress Jobs and No-Stress Jobs is a Mere Typographical or Scrivener's Error.

At step five of the sequential evaluation process, the Commissioner must determine whether Plaintiff can perform work that exists in the national economy based on her Residual Functional Capacity. To assist in making this determination, at the hearing, the ALJ posed the following hypothetical to the VE:

> I want you to consider for me an individual like this Claimant, the same age, education, has the residual functioning capacity for light work. This individual is able to lift 20 pounds occasionally, 10 pounds or less frequently, has some additional limitations, should be no ladders, ropes and scaffolds. This individual is limited to simple one and two-step routine, **low-stress procedures** with limited and superficial interaction with supervisors, coworkers and the public and is precluded from tasks that involve arbitration, negotiation, confrontation and supervision. This individual must avoid all workplace hazards. Any jobs in the national or regional economy for such an individual?

(R. at 657) (emphasis added). In response, the VE stated that given the Plaintiff's RFC and limitations, the jobs of cleaner and laundry worker at the light level met the hypothetical. (R. at 657-58).

In his decision, the ALJ wrote that Plaintiff has the RFC to perform light work, except that Plaintiff cannot use ladders, ropes, or scaffolds. (R. at 27). Additionally, he determined that Plaintiff must be limited to simple one and two step tasks "that **do not involve stress**" or more than simple interaction with co-workers, the public and supervisors and she must avoid all hazards. Id. (emphasis added). The ALJ further noted in his decision that to "determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base," he asked the vocational expert "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (R. at 30). The vocational expert testified that "given all of these factors" an individual would be able to perform jobs such as cleaner, dishwasher, and laundry worker. (R. at 31).

Here, the Plaintiff argues that the difference between the RFC determined by the ALJ in his decision where he states Plaintiff requires a no-stress job, and the hypothetical posed to the VE at the hearing, where the ALJ describes a low-stress job, cannot be overlooked because "[t]here is absolutely nothing in the Commissioner's regulations and rulings which even infer— let alone support—the ALJ's finding that stress can be non-existent in the workplace." (Plaintiff's Brief in Support of MSJ at 12). Thus, the ALJ's decision is erroneous. The Government argues that "[a]lthough the ALJ *inadvertently indicated* that Plaintiff was limited to 'tasks that do not involve stress' in his decision (Defendant's Brief in Support of MSJ at 9; R. at 27), a review of the hearing transcript shows that the ALJ asked the VE to consider that Plaintiff was limited to 'low stress' tasks." (Defendant's Brief in Support of MSJ at 18) (emphasis

17

added). Further, the Government suggests that given how the medical record does not "demonstrate [that] Plaintiff had more functional limitations than those provided in the ALJ's initial hypothetical question to the vocational expert, the ALJ was entitled to rely on the vocational expert's responsive testimony." Id.

The United States Court of Appeals for the Third Circuit instructs that a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Burns v. Barnhart, 312 F.3d 113, 123 (C.A.3 (Pa.), 2002) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d. Cir. 1984)). "A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments." Id. (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). As explained by the court in Madison v. Astrue, 2008 WL 2962337, *6 (M.D. Pa. 2008), "[i]f a typographical error is immaterial to the case, it should be discarded." (citing Hudson v. Commissioner of SSA, 93 Fed. Appx. 428, 430 (3d Cir. 2004). The Court in Madison considered an error, a "typographical" error if the "error is harmless, immaterial, and irrelevant because the ALJ moved on to step five and found that [p]laintiff could perform other work in the national economy." Id. The facts in Madison were that the ALJ's decision included the following heading to address step four of the evaluation: "The claimant is unable to perform any past relevant work." Id. The court determined that 'unable' was a typographical error and "[e]ven if it w[as] the intent of the ALJ to find that Plaintiff was unable to perform past relevant work, it would be irrelevant because he continued to step five and found that Plaintiff was able to perform other work in the national economy." Id.

18

Similar to <u>Madison</u> is <u>Beeks v. Commissioner of Social Security</u>, 363 Fed. Appx. 895 (3d. Cir. 2010). In <u>Beeks</u>, the ALJ concluded that "Beek's employment 'equated to substantial gainful activity,' and that 'the only reason she [wa]s not working more hours is that her job does not allow for any more, not for any other reason." <u>Id.</u> at 897. However, a heading in the ALJ's decision stated that Beeks "has not engaged in substantial gainful activity since October 1, 2002, to the alleged onset date." <u>Id.</u> at 897 n.4. The court determined that "the ALJ's inclusion of the word not" was a typographical error "given the analysis the ALJ conducted at step one." <u>Id.</u> Therefore, if the error has no effect on the analysis and outcome it has been considered by the courts mere typographical error.

In <u>Douglas v. Astrue</u>, 2010 WL 3522298 (D. S.C. 2010), the court held that it had "not been presented with convincing legal authority that would support a conclusion that [the] inconsistency should be categorized as a mere scrivener's error" and that "[i]n nearly all of the Social Security cases in which a court has concluded that an ALJ made a mere typographical or scrivener's error, the ALJ's intent was more than apparent." <u>Id.</u> at *3. In <u>Douglas</u>, the ALJ's RFC assessment included the nonexertional limitation of "unskilled work with a SVP of 1." <u>Id.</u> at *2. However, when the ALJ asked the VE to testify as to what types of jobs the plaintiff could perform, he asked him to include work with an SVP of 1 or 2. <u>See id.</u> In response, the VE only listed three SVP 2 occupations and their availabilities. <u>See id.</u> The court explained that it was "concerned about the lack of clarity as to the ALJ's intent" and "[n]either the decision nor the record provides sufficient information to determine whether the ALJ found [p]laintiff so impaired that she would be unable to work in an occupation that requires more than a short demonstration of her job duties, or whether he unintentionally omitted 'or 2' from his RFC assessment." <u>Id.</u> at *5. Thus, the court remanded the case.

In the case at hand, the ALJ provided a description to the VE asking for occupations that may be available for a person such as Plaintiff who, among other restrictions, can only tolerate "low-stress." Later, the ALJ, in his decision states that Plaintiff has the RFC to handle jobs "limited to simple 1 and 2 step tasks that do not involve stress." (R. at 27). We determine that the latter statement by the ALJ was merely a typographical or scrivener's error.

The ALJ asked the VE to identify jobs with "low-stress" procedures taking into consideration the medical evidence presented regarding Plaintiff. By virtue of the ALJ's complete analysis proceeding through to Step 5, we understand that he did not consider Plaintiff to have such debilitating medical issues so as to not be able to tolerate any stress in the workplace. The Plaintiff refers to Social Security Ruling 85-15 to support her contention that the Commissioner has previously ruled that there is no such job that is completely without stress (Plaintiff's Brief in Support of MSJ at 10), therefore, any scenario proposed to the VE would be moot if the ALJ considered Plaintiff to be unable to tolerate any stress. There would simply be no job possibilities in the economy. However, based on the transcript of the hearing and the ALJ's evaluation of Plaintiff's medical limitations, it is our understanding that he did not intend that "no-stress" jobs would be necessary for Plaintiff. In fact, the ALJ proposed several different limitation scenarios to the VE, none of which indicated a job with no stress, to gain insight to job possibilities in the economy that would suit Plaintiff. Therefore, the designation of a job without stress in the ALJ's decision may be considered merely a typographical error not having any effect on the outcome of the case and, therefore, does not necessitate remand.

We now move our analysis to whether the ALJ's determination of the Plaintiff's RFC was supported by substantial evidence. Plaintiff asserts that the Commissioner's decision should

be reversed because it is allegedly not supported by substantial evidence in the medical record. We consider each of Plaintiff's arguments in turn.

## 2. Whether the ALJ Erroneously Evaluated the Medical Evidence

As the finder of fact, the ALJ is required to review, properly consider, and weigh all of the medical records provided concerning the Plaintiff's claims of disability. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir. 1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer v. Apfel, 186 F.3d 422, 429 (3d. Cir 1999). When the medical evidence of records conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (citing Mason v. Shalala, 944 F2d 1058, 1066 (3d. Cir. 1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. See id. (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983)).

According to Plaintiff, the Commissioner made various mistakes with respect to analyzing the medical evidence. First, Plaintiff states that the Commissioner "simply ignore[d]" the opinions of Plaintiff's treating mental health sources, Dr. Sean Su, M.D. and Josh Leslie, PA-C, a physician's assistant, of Stairways Behavioral Health. (Plaintiff's Brief in Support of MSJ at 13; Plaintiff's Reply Brief in Support of MSJ at 3). Plaintiff further contends that the ALJ ignored that Dr. Su "opined that the plaintiff would have moderate limitations in carrying out simple instructions but that she would have extreme limitations in interacting with co-workers and supervisors and in responding appropriately to work pressures due to severe anxiety, depression and panic attacks." (Plaintiff's Brief in Support of MSJ at 13-14). Further, Plaintiff says that Mr. Leslie opined that Plaintiff would "be unable to meet multiple mental demands of

21

competitive employment on a regular and continuing basis and such demands included maintaining regular attendance, interacting appropriately with co-workers and supervisors, and reacting appropriately supervisory criticism." Id. at 14. Plaintiff argues that the ALJ cannot simply ignore the opinions of her treating mental health experts. (Plaintiff's Reply Brief in Support of MSJ at 4).

Second, Plaintiff argues that the ALJ "selectively reviewed" the consultative report of psychologist Bryon Hillin, Ph.D., and neither indicates whether he relied on it nor states the weight that he gave to the report. (Plaintiff's Reply Brief in Support of MSJ at 10). Additionally, Plaintiff contends that the ALJ is required to give more weight to a treating physician than to the opinion of a physician who only saw "a claimant only once or not at all." (Plaintiff's Brief in Support of MSJ at 20).

Third, Plaintiff argues that the ALJ erroneously found the opinion of non-examining state agency source, psychologist Douglas Schiller, Ph.D. to be "persuasive in that the claimant is capable of some type of work." (Plaintiff's Reply Brief in Support of MSJ at 11). Plaintiff argues that the ALJ erred in not subjecting Mr. Schiller's opinion to a "stricter standard' of review" because he was a non-examining source and that instead "the ALJ impermissibly gives deference to the source's opinion." Id. at 12. Finally, Plaintiff argues the ALJ erred in rejecting her subjective complaints as not entirely credible. (Plaintiff's Brief in Support of MSJ at 18-19).

The ALJ responds to Plaintiff's arguments saying he properly determined Plaintiff could perform "some light work despite her limitations." (Defendant's Brief in Support of MSJ at 1). The ALJ argues that the VE's testimony supported his conclusion that despite her limitations there exists work in the economy in which Plaintiff can engage and that there is no legitimate record evidence which shows that Plaintiff can't work within these parameters. We will first

22

evaluate the ALJ's determination regarding credibility and then evaluate the ALJ's review of the doctors' reports as a whole.

The District Court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. See Burns, 312 F.3d at 118.

### a. Whether the ALJ Erroneously Rejected Plaintiff's Testimony concerning her activities of daily living and improperly determined Plaintiff's Credibility.

Plaintiff contends that the ALJ's determination must be reversed because the ALJ failed to give appropriate weight to Plaintiff's self-reported limitations. The ALJ found Plaintiff not credible (R. at 28), and that her "daily activities were not indicative of total disability." (R. at 29). Plaintiff states in her Brief that the ALJ cites no activities – daily or otherwise – that supports his determination that the Plaintiff can meet the mental demands of competitive employment on a regular and continuing basis. Furthermore, Plaintiff cites Frankenfield v. Bowen, 861 F.2d 405 (3d Cir 1988) and Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981) for her position that, "[i]t is well established that the performance of sporadic and transitory activities such as housework, hobbies, etc. cannot be used to show an ability to engage in substantial gainful activity on a regular, continuing, and sustained basis." (Plaintiff's Reply Brief in Support of MSJ at 12-13).

The ALJ in his opinion states, "In activities of daily living, the claimant has mild restriction. The claimant testified that she is able to care for her two cats and goes grocery shopping with her boyfriend." (R. at 27). The ALJ also states in his decision that he considered Plaintiff's subjective complaints and limitations to the extent they limit the Plaintiff's ability to do basic work activities. (R. at 28). The ALJ states, "Whenever statements about the intensity, persistence, or functionally limited effects of pain or other symptoms are not substantiated by

objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire record." Id.

Plaintiff testified that she suffers from ongoing severe panic attacks and her panic attacks cause difficulty with concentration and memory. Her boyfriend must remind her to bathe and take medications. She gets nervous around people and only goes out of her house to attend doctor appointments and she often misses the appointments. (R. at 28). When the claimant makes subjective complaints of symptoms such as pain or fatigue, the ALJ must assess that claimant's credibility and look to whether objective medical evidence supports these allegations. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999); 20 C.F.R. § 404.1529. If the ALJ rejects the Plaintiff's subjective complaints, then the ALF must support this decision with an explanation based on evidence from the record. See Mason v. Shalala, 994 F.2d 1058, 1067-69 (3d Cir., 1993). A claimant's subjective complaints must be supported by objective medical evidence. See 20 C.F.R. § 1416.929(c). The ALJ determined the Plaintiff's description of the persistence and limited effects of the symptoms were not credible to the extent they were inconsistent with the residual Functional Capacity assessment. (R. at 28). In making this determination, the ALJ cites to the following information: That the Plaintiff's conditions of major depressive disorder, recurrent; panic disorder with agoraphobia, and history of drug abuse have improved with the use of medications. That she is making good progress with the Esper Treatment Center. (R. at 29).

This Court agrees with the ALJ in that the medical record does not support Plaintiff's subjective reporting of her limitations and, thus, we agree that there is substantial evidence in the record to support the ALJ's determination that Plaintiff is only partially credible.

## b. Whether the ALJ Committed an Error of Law in his Assessment of the Evidence of Record Regarding the Plaintiff's Mental Impairments.

As stated above, the ALJ cited to several medical resources as well as the vocational expert in determining the credibility of Plaintiff's subjective description of her limitations and her limitations for work. The ALJ finds the Plaintiff has the following mental Residual Functional Capacity: "She is limited to simple 1 or 2 step tasks that do not involve stress or more than simple interaction with co-workers, the public, and supervisors." (R. at 27). In his decision, the ALJ cites to several medical authorities in his analysis. He includes her medical history at Stairways Behavioral Health and references the psychiatric evaluation performed there by her treating physician Dr. Su. He notes in particular that the Plaintiff had improved with medicine but did have a pattern of cancelling appointments. The ALJ, however, does not make mention of the questionnaire filled out by the Stairways' Physician's Assistant, Josh Leslie. The ALJ also specifically cites to the evaluation performed by consultative physician Dr. Hillin, Plaintiff's successful addiction treatment, and the determinations of the non-examining medical/psychological consultant Dr. Schiller. The ALJ states summarily that he found Drs. Hillin and Schiller's conclusions are consistent with other substantial evidence of record and found their opinions persuasive in that the claimant is capable of some type of work. (R. at 30).

Plaintiff contends that the ALJ ignored pertinent medical evidence and furthermore, without justification, gave improper weight and deference the consultative physicians. (See Brief in Support of MSJ at 9). Furthermore, Plaintiff argues that the ALJ should have given greater deference to the physicians from Stairways than he did to the consultative physicians' Drs. Hillin and Schiller reports.

Plaintiff asserts that Dr. Su's opinion that the Plaintiff would have moderate limitations in carrying out simple instructions and that she would have extreme limitations in interacting with co-workers and supervisors and in responding appropriately to work pressures due to severe anxiety, depression, and panic attacks, as well as Mr. Leslie's opinion that Plaintiff would be unable to meet multiple mental demands of competitive employment on a regular and continuing basis and such demands included maintaining regular attendance, interacting appropriately with co-workers and supervisors, and reacting appropriately to supervisory criticism, were ignored because there was no mention of them in the ALJ's decision. (See Plaintiff's Brief in Support of MSJ, citing R. at 566, 578). The Plaintiff considers the doctors at Stairways to be her treating physicians and as such, argues that the ALJ should accord their reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. See Plummer, 186 F. 3d 422, 429 (3d Cir. 1999).

Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404-1527(d)(2). Moreover, the ALJ must consider all evidence and give some reason for dismissing the evidence he chooses to reject. See Plummer 186 F. 3d at 429 (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983).

The regulations offer that more weight is given to a claimant's treating physician because

these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. § 404.1527(d)(2).

Further, "Where a treating source's opinion on the nature and severity of a claimant's impairment is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it will be given "controlling weight." Id.

The Commissioner considers the following factors in determining the weight to be given to a treating physician:

(1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the diagnosis is supported by the source's findings; (4) whether the diagnosis is consistent with the record as a whole; (5) whether the source is a specialist in any given area; and (6) any other reason to give a particular source weight in determining disability.

20 C.F.R. § 404.1527(d).

While we do not think that the ALJ completely ignored the medical evidence presented by Dr. Su, it is the opinion of this Court that the ALJ did not pay proper deference to the evidence in the record from Plaintiff's treating physician Dr. Su and, therefore, the ALJ's opinion lacks substantial evidence supporting his decision. In particular, while the ALJ references Dr. Su's evaluation in the transcript, and notes that the Plaintiff did not regularly attend sessions and there was a hiatus in her attendance to the Stairways Program between years 2003 and 2004 (R. at 29), he fails to explain his rejection of Dr. Su's 2007 report wherein Dr. Su concluded that:

Plaintiff shows Marked impairment in understanding and remembering detailed instructions, she shows Marked impairment in carrying out detailed instructions. She shows Extreme impairment in making judgments on simple work-related decisions. She shows Extreme impairment interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, interacting appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting. Dr. Su did not believe Plaintiff could manage benefits in her own best interest.

(R. at 565- 67).

Dr. Su's most recent evaluation shows a deterioration in Plaintiff's condition since the evaluation he performed in 2004. The ALJ makes no mention of Plaintiff's condition as Dr. Su describes it in the most recent medical report. Furthermore, the ALJ does not go through the steps as described above to justify the weight he gave to this report. When the medical evidence of record conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer 186 F. 3d at 429.

With regard to the questionnaire filled out by Mr. Leslie, Plaintiff points out that Mr. Leslie is a physician's assistant at Stairways and his opinion can provide insight into the severity of an impairment, but the ALJ need not consider his testimony as from an "acceptable medical source." (Plaintiff's Brief in Support of MSJ at 2). Thus, the ALJ's treatment of Mr. Leslie's opinion was discretionary and acceptable.

Moreover, we understand from the record that the ALJ finds the bulk of medical evidence on record consistent with the evaluations of Drs. Hillin and Schiller, and therefore, he found their opinions were persuasive in that Plaintiff was capable of handling some type of work. (R. at 30). However, we have no specific information from the ALJ regarding which parts of the record he found consistent with the reports of Drs. Hillin and Schiller. Furthermore, the ALJ go through the steps to justify the weight he accorded to Drs. Hillin's and Schiller's reports. The ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429. Thus, while the ALJ's determination gave greater weight to the consultative doctors, he did not provide enough

information or reasoning in his decision to prove that his decision was supported by substantial evidence.

### VI. *Conclusion*

For the foregoing reasons, we conclude that there is not substantial evidence existing in the record to support the Commissioner's decision that Plaintiff is not disabled, and therefore, the Defendant's Motion for Summary Judgment is denied. We further find that in this case remand is required so that ALJ can provide an explanation for the apparent rejection of the treating physician's opinion regarding Plaintiff's limitations and to provide support for the weight given to the consultative doctors' reports. The Plaintiff's Motion for Summary Judgment is granted to the extent that it seeks remand to the Commissioner for further proceedings consistent with this Opinion, and otherwise is denied. This matter is remanded to the Commissioner for a decision not inconsistent with this Opinion.

An appropriate order will be entered.

Date *March 27, 2012*

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc:    counsel of record